UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANGELO SCOLIERI, individually and as
Trustee of the Angelo Scolieri
Revocable Insurance Trust UTA August
23, 2007, and KATHLEEN SCOLIERI,

        Plaintiffs,

v.                                   Case No:  2:16-cv-690-FtM-38CM

JOHN HANCOCK LIFE INSURANCE
COMPANY (U.S.A.) and FIRST
INSURANCE FUNDING CORP.,

        Defendants.
_____/

## OPINION AND ORDER[1]

       This matter comes before the Court on review of Defendants John Hancock Life Insurance Company (U.S.A.)'s ("John Hancock") and First Insurance Funding Corp.'s ("First Insurance") Motions to Dismiss (Doc. 40, 41), filed on November 10, 2016 and November 14, 2016.  Plaintiffs Angelo Scolieri ("Scolieri") and Kathleen Scolieri submitted their Response in Opposition (Doc. 44) on December 27, 2016, to which John Hancock and First Insurance filed Replies (Doc. 49, 50) on January 11, 2017 and January 12, 2017. This matter is ripe for review.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## BACKGROUND

This case centers on allegations of a fraudulent scheme to induce Scolieri to purchase a universal life insurance policy (the "Policy") that he could not afford. The Amended Complaint alleges that in April 2007, Scolieri was 67 years old, in good health, had an illiquid net worth of around $16,000,000.00, and had an additional life expectancy of 15.8 years. (Doc. 26 at ¶¶ 13, 26). Around that time, he was approached by Bradley Wasserman, an agent of John Hancock, who implored him to purchase the Policy to resell it on a secondary market at a discount from the amount otherwise paid upon death. (Doc. 26 at ¶ 11).

The Policy provided a $16,000,000.00 death benefit, but required annual premium payments of $432,511.00 to be submitted each year for 34 years. (Doc. 26 at ¶ 18, 26-3 at 3). Wasserman allegedly represented that if Scolieri purchased the Policy, he could arrange for it to be resold within two (2) years for $3,200,000.00, which represented a profit of more than $1,500,000.00. (Doc. 26 at ¶¶ 12, 33). Even if the Policy could not be resold in two years, Wasserman represented that he could sell it before Scolieri's funds to pay the premiums had been depleted. (Doc. 26 at ¶ 12).

Scolieri then elected to purchase the Policy and borrow the funds to cover the annual premium payments. (Doc. 26 at ¶ 14). Wasserman informed Scolieri he should borrow the funds from A.I. Credit Corp., John Hancock's exclusive lending partner. (Doc. 26 at ¶ 14). Defendants then allegedly advised Scolieri he should establish a trust to act as an artificial third party to borrow the funds. (Doc. 26 at ¶ 15).

Upon this advice, Scolieri formed the Angelo Scolieri Revocable Insurance Trust UTA August 23, 2007 ("Trust"), and took out a loan (the "Loan Agreement") with A.I. Credit

Corp., which he and Kathleen Scolieri personally guaranteed.  (Doc. 26 at ¶ 21).  Scolieri and Kathleen Scolieri also posted a certificate of deposit of $750,000.00 on the Loan Agreement.  (Doc. 26 at ¶ 21).  The money advanced under the Loan Agreement was used to pay the Policy premiums.  (Doc. 26 at ¶ 15).  The Loan Agreement required, however, that for all funds advanced, Plaintiffs would have to supply additional collateral. (Doc. 26 at ¶ 22).

Though Scolieri purchased the Policy and received coverage, the contemplated resale was never executed.  (Docs. 26 at ¶ 23, 26-3 at 3).  On July 28, 2009, First Insurance acquired a majority of A.I. Credit Corp.'s assets and obligations, including the Trust's account.  (Doc. 26 at ¶ 7).  Nearly eight (8) years later, John Hancock informed Plaintiffs it could not resell the Policy.  (Doc. 26 at ¶ 39).

On August 10, 2016, Plaintiffs filed a Complaint in the Twentieth Judicial Circuit in and for Collier County, bringing claims against John Hancock and First Insurance in the stead of A.I. Credit Corp. for intentional misrepresentation, negligent misrepresentation, and civil conspiracy.  (Docs. 1 at ¶ 1, 2 at 1-10).  First Insurance removed the case to this Court.  (Doc. 1).  After First Insurance filed a Motion to Dismiss (Doc. 17), Plaintiffs filed an Amended Complaint that alleged the same three counts.  (Doc. 26)

The Amended Complaint alleges that Defendants had a long history of working together, and knew that Scolieri lacked the assets to pay future premiums without first borrowing funds.  (Doc. 26 at ¶¶ 17, 20).  Moreover, the Amended Complaint states that Defendants knew that when Scolieri posted his assets as collateral for the loan, they were insufficient to cover premiums the duration of his life expectancy.  (Doc. 26 at ¶ 17).  On this basis, the Amended Complaint alleges that John Hancock intentionally

misrepresented the marketability of the Policy on a secondary market, and that Defendants intentionally failed to inform Plaintiffs of the risks of purchasing the Policy or entering into the Loan Agreement. (Doc. 26 at ¶¶ 32-33, 36-37). It also alleges that Defendants acted in concert to persuade Plaintiffs to purchase the Policy and enter into the Loan Agreement on credit from A.I. Credit Corp. (Doc. 26 at ¶¶ 53, 36-37). Now, Defendants move to dismiss the Amended Complaint. (Doc. 40, 41).

## STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a Complaint for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss, the Court limits its consideration to well-pleaded factual allegations, documents central to, or referenced in, the complaint, and matters judicially noticed. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a plaintiff's complaint as true and take them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Conclusory allegations, however, are not entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. A claim is plausible if the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Twombly*, 550 U.S. at 556. Thus, "the-

defendant-unlawfully harmed me accusation" is insufficient. *Iqbal*, 556 U.S. at 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal modifications omitted). Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

When alleging fraud or mistake in federal court, Federal Rule of Civil Procedure 9(b) requires that "a party must state with particularity the circumstances constituting fraud. . . ." This means "a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *United States v. McInteer*, 470 F.3d 1273, 1278 (11th Cir. 2006). Stated differently, "[t]his means who, what, when, where, and how: the first paragraph of any newspaper story." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006).

## DISCUSSION

Defendants' Motions to Dismiss are multifaceted. First, they argue that the Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed in total. Second, First Insurance argues that the counts within the Amended Complaint do not meet Rule 9(b)'s particularity threshold. Third, Defendants argue that the Amended Complaint should be dismissed because its claims are time-barred. Fourth, John Hancock argues that Kathleen Scolieri's claims should be dismissed because there are no allegations that fraudulent statements were made to her. To the extent laid out herein, the Court agrees.

## A. Intentional Misrepresentation

The elements of an intentional misrepresentation claim in Florida are "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).  However, "[a]n action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." *Mejia v. Jurich*, 781 So.2d 1175, 1177-78 (Fla. 3d DCA 2001).  There is, however, an exception when "the person expressing the opinion is one having superior knowledge of the subject of the statement and the plaintiff can show that said person knew or should have known from facts in his or her possession that the statement was false." *Id*.

In addition, "Florida law recognizes that [intentional misrepresentation] can occur by omission." *Woods v. On Baldwin Pond, LLC*, 634 F. App'x 296, 297 (11th Cir. 2015) (citing *ZC Ins. Co. v. Brooks*, 847 So.2d 547, 551 (Fla. 4th DCA 2003); *Berg v. Capo*, 994 So.2d 322, 327 (Fla. 3d DCA 2007) ("Fraud may be established by either an intentional misrepresentation or omission of a material fact.")).  Even so, "[i]n an arms-length transaction . . . there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered." *Maxwell v. First United Bank*, 782 So. 2d 931, 934 (Fla. 4th DCA 2001); *see also Watkins v. NCNB Nat. Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993). Mere "nondisclosure of material facts in an arm's length transaction is not actionable misrepresentation unless [some] . . . artifice or trick [is employed] to prevent an independent investigation." *Taylor Woodrow Homes Fla,. Inc. v. 4/46-A Corp.*, 850 So.

2d 536, 541 (Fla. 5th DCA 2003); *see also Ramel v. Chasebrook Const. Co.*, 135 So. 2d 876, 882 (Fla. 2d DCA 1961).

Here, the Amended Complaint alleges that John Hancock intentionally and affirmatively misrepresented its ability to resell the Policy on a secondary market for a profit.  (Doc. 34).  John Hancock argues this claim must be dismissed because any representations regarding resale were non-actionable opinions that focused on conditions in the future.  In contrast, Plaintiffs argue that the claim is proper because John Hancock's statements pertained to the then-current marketability of the Policy.  Plaintiffs' argument is untenable.

Notably, the Amended Complaint does not explicitly allege that John Hancock or Wasserman provided Plaintiffs with any false statements of fact or why that is the case. Because falsity is an element of intentional misrepresentation, such an exclusion would normally result in the immediate failure of Plaintiffs' claim. *Butler*, 44 So. 3d at 105.  But Florida carves out an exception for opinion statements where an entity has superior knowledge of a subject and knows or should know that the statement is untrue. *Mejia*, 781 So.2d at 1177-78.  "Scienter, or guilty knowledge, is an element of intentional misconduct, which can be established by showing actual knowledge, or that the defendant was reckless or careless as to the truth of the matter asserted." *Ocean Bank of Miami v. Inv-Uni Inv. Corp.*, 599 So. 2d 694, 697 (Fla. 3d DCA 1992).

Against this backdrop, Plaintiffs' argument that their intentional misrepresentation claim was not based on then-current facts is undermined by the plain text of the Amended Complaint.  It does not allege that Wasserman stated he could resell the Policy immediately, but rather within two (2) years and at a specific price of $3,200,000.00 or at

least before Scolieri's ability to pay the premiums had been depleted.  (Doc. 26 at ¶¶ 12, 33).  Because it would have been impossible for Wasserman to foretell the future, the viability of his statement was tethered to several external economic factors including the desired price of resale, the duration and progression of the policy at the time of resale, the overall economic climate at the time of resale, the size of the secondary market, the ability to reach members of the secondary market, and the skills of the particular salesman.  These factors are constantly in flux, and as a result any statement about the Policy's future marketability would be inherently subjective.[2]  Hence, John Hancock's statements are properly viewed as manifestations of opinion.

While the Amended Complaint states that Wasserman, and thereby John Hancock, opined about marketability with reckless disregard for the truth, it does not allege that he had superior knowledge of the Policy's marketability, or provide any factual support for the allegation that the statement was reckless.  The Court cannot overlook these inadequacies.  Absent a superior knowledge of the matter asserted, Plaintiffs cannot avail themselves of the opinion carve-out.  *See Mejia*, 781 So.2d at 1177-78.  And, while the Amended Complaint alleges that Wasserman provided marketability opinions as John Hancock's agent in reckless disregard of the truth, it does not elaborate on why that is the case.  As a result, the claim fails to satisfy the heightened pleading threshold of Rule 9(b) and must be dismissed as it pertains to John Hancock's alleged affirmative misrepresentations.

---

[2] It is perhaps pertinent to note that the Policy was purchased in late 2007, only months before the major effects of the Great Recession were felt. In the years that followed, well over 10 trillion dollars was lost in investment markets and across the United States.  As a result, it is reasonable that any projection based on the economic forecasts in 2007 would change only a few months later.

Even if John Hancock did not make actionable misstatements, the Amended Complaint alleges that Defendants intentionally omitted an accurate description of the risk assumed by Plaintiffs when they purchased the Policy on credit, especially in light of the fact that they had insufficient funds and insufficient borrowing power to pay premiums for a time that would exceed Scolieri's life expectancy.  Defendants argue this portion of the intentional misrepresentation claim must also be dismissed because they owed Plaintiffs no duty to disclose information for their benefit.  The Court agrees.

Plaintiffs rely on *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985), to argue Defendants owed them a duty to disclose the full financial risks of purchasing the Policy and entering into the Loan Agreement.  In *Johnson*, home purchasers sued the home's former owners alleging that they affirmatively misrepresented the home's characteristics and intentionally failed to disclose defects prior to sale.  *Id.* at 627.  The Supreme Court of Florida held that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer."  *Id.* at 629.  The Supreme Court continued that "[t]his duty is equally applicable to all forms of real property, new and used." *Id.*  Turning back to the matter at hand, neither the Policy nor the Loan Agreement can be viewed as real property. Consequently, *Johnson* is inapposite here.

Another manner in which an elevated duty would be imposed on Defendants would be if they bore a fiduciary duty.  Such a duty must be based on either an express arrangement or an implication provided by the relationship between the parties.  *See Maxwell*, 782 So. 2d 931, 933-34 (Fla. 4th DCA 2001).  Where there is no express arrangement, it may be established by implication where there is both an allegation of

dependency by one party and a voluntary assumption of a duty by the other party to "advise, counsel and protect the weaker party." *Watkins v. NCNB Nat. Bank of Florida, N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993). The analogue to this rule, is that the mere fact that one party places its trust in the other does not create a fiduciary relationship absent some manifestation of recognition, acceptance, or undertaking of fiduciary duties by of the other party. *See Bankest Imports, Inc. v. ISCA Corp.*, 717 F. Supp. 1537, 1541 (S.D. Fla. 1989) (citing *Harris v. Zeuch*, 103 Fla. 183, 189 (1931)); *see also Motorcity of Jacksonville, Ltd. by and through Motorcity of Jacksonville, Inc. v. Southeast Bank, N.A.*, 83 F.3d 1317, 1339 (11th Cir. 1996).

The Amended Complaint alleges that Plaintiffs placed their trust in Defendants to provide them with financial information regarding the purchase of the Policy and the execution of the Loan Agreement. (Doc. 26 at 40). The issue is whether Defendants manifested their acceptance of fiduciary duties. The Amended Complaint does not allege that they did. As a result, the Court will assume that the transactions took place at arm's-length.

From this standpoint, Defendants owed no enhanced duty to act for Plaintiffs' protection when they purchased the Policy and executed the Loan Agreement. *See Maxwell*, 782 So. 2d at 934. This is particularly true for First Insurance because Florida courts have explicitly found that a lender does not have a duty to act for the benefit of a borrower. S*ee Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994). Moreover, the Loan Agreement also contains an exculpatory disclaimer that states "Borrower acknowledges and agrees that Lender has not and will not provide any advice or recommendations in connection with the loans . . . ." (Doc. 26-1 at 8).

Plaintiffs attempt to rebut the application of the Loan Agreement's exculpatory disclaimer by relying on *Oceanic Villas Inc. v. Godson*, 148 Fla. 454 (1941). There, Florida's Supreme Court found that where there is fraud in the procurement of a contract, such activity forms a basis for recession and cancellation. *Id.* at 459. *Oceanic Villas*, however, provides no shelter because the Amended Complaint does not request those forms of relief and instead seeks monetary damages.

Florida law states that where an exculpatory clause is used in a contract, a claim may still be brought in intentional tort, except where such clauses make their intention clear and unequivocal. *See Fuentes v. Owen*, 310 So. 2d 458, 459 (Fla. 3d DCA 1975). In the same regard, it is well established that "[a] party cannot recover for alleged false misrepresentations that are adequately dealt with or expressly contradicted in a later written contract." *TRG Night Hawk Ltd. v. Registry Dev. Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009). Here, any expectations Plaintiffs may have for advice from A.I. Credit Corp. were expressly and unequivocally disclaimed by the Loan Agreement. Thus, because Defendants did not owe a duty to act for Plaintiffs' benefit or protection, and especially because A.I. Credit Corp. disclaimed any advice-related obligations in the Loan Agreement, the Amended Complaint has failed to allege any actionable omissions.

In addition, Plaintiffs allege no artifice or trick to prevent them from making further independent inquiries regarding the Policy or the Loan Agreement. Unlike the Defendants, Plaintiffs were in the apex position to understand the extent of their finances. If they had taken reasonable investigative measures, they likely could have discovered that they had insufficient collateral to cover Loan Agreement's and Policy's obligations if Scolieri were to live out his life expectancy and the Policy was not resold. Florida law is

clear on this point.  Not only did Defendants have no duty to disclose facts that Plaintiffs could have otherwise discovered on their own, *see Maxwell*, 782 So. 2d at 934, but even affirmative statements regarding a loan's affordability are non-actionable opinions involving facts more readily accessible to debtors than to lenders.  *See Thompson v. Bank of N.Y.*, 862 So. 2d 768, 771 (Fla. 4th DCA 2003).  It carries that the same rule can be applied where a party elects against advising on the propriety of a loan.

In sum, the Court finds that the Amended Complaint fails to plead an actionable misrepresentation or omission.  Because of this finding, the Court need not decide whether the remaining elements of intentional misrepresentation have been met.[3]

## B.  Negligent Misrepresentation

Defendants next argue that the Amended Complaint fails to state a claim for negligent misrepresentation.  Under Florida law, to establish negligent misrepresentation, a plaintiff must prove

> (1) [a] misrepresentation of material fact; (2) the representor .
> . . ma[d]e the representation without knowledge as to its truth
> or falsity, or . . . under circumstances in which he ought to
> have known of its falsity; (3) the representor . . . intend[ed] that
> the misrepresentation induce another to act on it; (4) injury
> must result to the party acting in justifiable reliance on the
> misrepresentation.

*Souran v. Travelers Ins. Co.*, 982 F.2d 1497 (11th Cir.1993) (quoting *Hoon v. Pate Constr. Co., Inc.*, 607 So.2d 423, 427 (Fla. 4th DCA1992)).  Notably, an action for negligent misrepresentation cannot be maintained if an investigation by the recipient of the information would have revealed the falsity of the information.  *Gilchrist Timber Co. v. ITT*

---

[3] Although the intentional misrepresentation claim fails on the first element, the Court notes concerns regarding the satisfaction of Rule 9(b)'s heightened particularity threshold in the Amended Complaint's claim-specific description of Defendants' alleged omissions.

*Rayonier, Inc.*, 696 So. 2d 334, 339 (Fla. 1997).   In other words, a recipient of an erroneous representation cannot "hide behind the unintentional negligence of the misrepresenter when the recipient is likewise negligent in failing to discover the error." *Butler*, 44 So. 3d at 105 (citations omitted).  The Complaint does not allege an actionable misrepresentation or omission.   Moreover, Plaintiffs were, at worst, equally able to uncover information related to the financial advisability of purchasing the Policy and entering into the Loan Agreement.   Consequently, the first element of negligent misrepresentation has not been satisfied and the Count II is dismissed.

**C.  Civil Conspiracy**

Last, Defendants argue that Count III, which sounds in Civil Conspiracy, must be dismissed.  To plead an actionable civil conspiracy claim, a plaintiff must allege "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x. 882, 886 (11th Cir. 2014) (citing *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997).  An actionable conspiracy also requires an actionable underlying tort or wrong.   *Raimi*, 702 So. 2d at 1284.

Here, the Amended Complaint fails to allege the existence of any underlying wrong that could form the basis for a civil conspiracy claim.  The Amended Complaint alleges that Defendants "acted in concert . . . to persuade Plaintiffs to purchase the [P]olicy on credit by means of fraud as alleged in [p]aragraph 36 and 37 . . . . " (Doc. 26 at ¶ 10).  However, paragraphs 36 and 37 are allegations for the intentional misrepresentation

claim.  Because that claim does not pass Rule 12(b)(6) muster, Defendant's alleged conduct cannot support Plaintiffs' civil conspiracy claim.  *See Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F.Supp.2d 1272, 1280 (M.D. Fla.  2008) (dismissing civil conspiracy claim where underlying claim was defeated); *Heath v. Estate of Heath*, No. 2:14–cv–610–JHH, 2014 WL 4792283, at *3 (N.D. Ala. Sept. 24, 2014) ("[B]ecause the underlying claim of breach of contract fails . . . the claim for civil conspiracy must also necessarily fail.").[4]

Accordingly, it is now

**ORDERED:**

1.  Defendants John Hancock Life Insurance Company (U.S.A.)'s, and First Insurance Funding Corp.'s Motions to Dismiss (Docs. 40, 41) are **GRANTED**. The Amended Complaint (Doc. 26) is **DISMISSED without prejudice**.

2.  Plaintiffs may file a Second Amended Complaint on or before March 7, 2017.

**DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of February, 2017.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

---

[4] Because the Court dismisses each Count of the Amended Complaint, it need not address Defendants' remaining arguments.